IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KELIA WEAVER MCCLEARY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 15-0098-WS-C |
| | ) |
| DLJ MORTGAGE CAPITAL, INC., | ) |
| et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER

This matter is before the Court on the motion to dismiss filed by defendants DLJ Mortgage Capital, Inc. ("DLJ"), Select Portfolio Servicing, Inc. ("Select"), Selene Finance, LP ("Selene"), and U.S. Bank, N.A. Inc. ("U.S. Bank"). (Doc. 60). The parties have filed briefs in support of their respective positions, (Docs. 60, 64, 66), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

## BACKGROUND

According to the amended complaint, (Doc. 55), the plaintiff financed the purchase of her home. Wilmington Finance was the lender; defendant Mortgage Electronic Registration Systems, Inc. executed the mortgage as Wilmington Finance's nominee. The loan was purportedly sold and transferred to U.S. Bank, with the mortgage and note purportedly assigned to U.S. Bank as trustee. A procession of defendants acted as loan servicer. Defendant Green Tree Servicing, LLC ("Green Tree") serviced the loan from May 3, 2010 to June 2, 2013, followed (in chronological order) by Select, Selene and DLJ.

The amended complaint lists fourteen counts.  The movants seek dismissal of seven of them:

- Count One – negligence
- Count Two – wantonness
- Count Three – unjust enrichment
- Count Four – wrongful foreclosure
- Count Five – slander of title
- Count Seven – fraud
- Count Fourteen – claim for declaratory relief

## DISCUSSION

**I. Negligence and Wantonness.**

Count One alleges that the servicer defendants, including Green Tree, negligently:  (1) serviced the loan; (2) attempted to collect sums not owed by the plaintiff; (3) caused her property insurance to be canceled; (4) defaulted the plaintiff; (5) attempted a foreclosure sale; (6) failed to ensure that information disseminated to third parties was maximally accurate; (7) failed to train their employees properly on the thorough investigation of disputed accounts; (8) failed to train and/or supervise their employees and agents properly on handling her loan account; and (9) failed to remove adverse reporting once she disputed it.  (Doc. 55 at 9-10).  Count Two alleges that the same defendants were wanton in these respects.  (*Id*. at 10-11).

The movants first deny the viability of a claim for negligent or wanton loan servicing.  (Doc. 58 at 6-7).  As the Court has noted, "[r]ecent federal precedent interpreting Alabama law has uniformly found that no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law, at least in the absence of personal injury or property damage …."  *Selman v. CitiMortgage, Inc.*, 2013 WL 838193 at *5 (S.D. Ala. 2013).  Moreover, "[t]he

Court agrees with these decisions' construction of Alabama law, and particularly their emphasis that the mortgage servicing obligations at issue here are a creature of contract, not of tort, and stem from the underlying mortgage and promissory note executed by the parties, rather than a duty of reasonable care generally owed to the public." *Id*. at *6.  Therefore, "[t]hese claims fail as a matter of law." *Id*. at *5; *accord Quinn v. Deutsche Bank National Trust Co*., 2014 WL 977632 at *6-7 (S.D. Ala. 2014).

       To the extent Counts One and Two attempt to assert claims for negligent or wanton loan servicing, then, the motion to dismiss is due to be granted.  Unfortunately, the movants have not undertaken to demonstrate that the entirety of Counts One and Two is captured by the foregoing rule.  For example, the movants have neither argued nor attempted to show that negligent or wanton failure to train constitutes negligent or wanton loan servicing for purposes of the rule.  The parameters of the movants' legal victory thus remain indeterminate.

       More generally, the movants argue that the existence of a contract can, under the right circumstances, preclude a separate tort duty.  (Doc. 60 at 5-6).  But they also concede that "a duty of due care can accompany a contractual obligation," based on considerations of foreseeability of harm.  (*Id*. at 6 (internal quotes omitted)).  Such nebulous assertions cannot demonstrate the legal inadequacy of Counts One and Two.

       Targeting the allegations concerning the movants' failure to ensure the accuracy of information disseminated to third parties and failure to remove adverse reporting when she disputed it, the movants object that the amended complaint does not identify what information was disseminated, when it was disseminated, how it was false or damaging, or when or how the plaintiff disputed it. (Doc. 60 at 5).  This is not a fraud claim, and the movants offer no authority for the proposition that this degree of detail is indispensible to a negligence or wantonness claim.

## II. Unjust Enrichment.

Count Three is based on the movants' actions "in attempting foreclosure," which forced the plaintiff to pay "unauthorized and unearned fees and expenses … under threat of foreclosure." (Doc. 55 at 12). The movants note that an unjust enrichment claim generally cannot succeed when an express contract covers the same subject matter, and they point to the mortgage contract as an express contract precluding the plaintiff's unjust enrichment claim. (Doc. 60 at 8-9).

As the Court has noted, "where a plaintiff has brought claims sounding in both express contract and quasi-contract [i.e., unjust enrichment] as to the same subject matter, Alabama courts have deemed the quasi-contract claim not to be cognizable." *White v. Microsoft Corp.*, 454 F. Supp. 2d 1118, 133 (S.D. Ala. 2006). The movants, however, have not addressed whether the mortgage contract addresses the same "subject matter" (however that term is to be defined) as the unjust enrichment claim. The Court therefore cannot ascertain whether the unjust enrichment claim is precluded.

## III. Wrongful Foreclosure.

The Court previously "has concluded that Alabama law recognizes no claim for wrongful foreclosure unless: (1) a foreclosure sale took place; and (2) the defendant acted with an improper purpose rather than to secure the plaintiff's debt." *Petty v. Rudd*, 2013 WL 1821877 at *1 (S.D. Ala. 2013) (citing cases). The amended complaint does not allege that a foreclosure sale took place; on the contrary, Count Four complains that the movants wrongfully "initiated and attempted to conduct a foreclosure proceeding." (Doc. 55 at 13). Here, as in *Petty*, "[t]he plaintiff offers no reason the Court should depart from its prior decisions." 2013 WL 1821877 at *1. Here, as in *Petty*, the movants thus are entitled to dismissal of this claim.

## IV. Slander of Title.

Count Five alleges that the movants "are attempting foreclosure which has caused a cloud to be placed on the title of the property of the Plaintiff." (Doc. 55 at 14).

> The elements of a slander of title action are:
> (1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail).

*Folmar v. Empire Fire and Marine Insurance Co.*, 856 So. 2d 807, 809 (Ala. 2003) (internal quotes omitted). The movants argue the amended complaint fails to satisfy the third, fourth, fifth and sixth of these elements. (Doc. 60 at 10-12).

The movants concede the amended complaint alleges that notice of foreclosure sale was repeatedly published in the Washington County News. (Doc. 60 at 11). Thus, their unexplained statement that "it is difficult to determine from Plaintiff's FAC whether a publication actually took place," (*id.*), is puzzling. *See Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1243 (N.D. Ala. 2013) (Coogler, J.) (publishing notice of a foreclosure sale satisfies the publication requirement); *Phillips v. Mortgage Electronic Registration Systems, Inc.*, 2013 WL 1498956 at *11 (N.D. Ala. 2013) (Putnam, M.J.) (same); *Fassina v. CitiMortgage, Inc.*, 2012 WL 2577608 at *13 (N.D. Ala. 2012) (Proctor, J.) (same).

Similarly, while the movants complain that the amended complaint does not expressly allege that publication of the foreclosure notice "disparaged" the plaintiff's title, (Doc. 60 at 10-12), they do not address whether such a publication

5

of itself raises a plausible inference of disparagement, obviating more specific pleading.[1]

The pleading of malice presents a closer question. "Malice requires proof that [the defendant] intentionally disparaged [the] plaintiff's title to the property slandered or recklessly disparaged [it] without information sufficient to support a bona fide belief in the veracity of the disparaging statement." *Roden v. Wright*, 646 So. 2d 605, 611 (Ala. 1994) (emphasis and internal quotes omitted). The amended complaint alleges that the "attempted foreclosure proceeding" was intentional, (Doc. 55 at 13), but it does not specifically allege that the movants intended to disparage the plaintiff's title without adequate justification. Similarly, the amended complaint alleges that the movants knew the plaintiff "claimed" that she was not in default and that the attempted foreclosure sale was wrongful and invalid, (*id*. at 5, 7-8), but it does not allege they knew the plaintiff in fact was not in default or that the attempted foreclosure sale in fact was wrongful and invalid.

The Court need not dwell on the pleading of malice, because it is clear the amended complaint does not adequately allege special damages. "The nature and essential effect of the special damage suffered … is that the false and malicious matter charged interrupted, or injuriously affected, some dealing of the plaintiff with his property, or naturally, reasonably, and proximately superinduced the necessity for his pecuniary expenditure to relieve his right to the property from the damnifying effect of such false and malicious slander." *Ebersole v. Fields*, 62 So. 73, 75 (Ala. 1913); *see also Norman v. Bozeman*, 605 So. 2d 1210, 1214 (Ala. 1992) (no special damages when no evidence of lost sales or profits); *Rice v. JPMorgan Chase Bank NA*, 2014 WL 3889472 at *9 *N.D. Ala. 2014)

---

[1] An element such as disparagement may be pleaded by "inferential allegations," *Wilchombe v. TeeVee Toonz, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (internal quotes omitted), so the failure to employ the word "disparaged" is not necessarily fatal. The pleaded facts must render the element of disparagement "plausible," *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570, but the movants have failed to show that a foreclosure notice does not plausibly suggest disparagement.

("Typically, special damages pertain to failed transactions or other forms of lost profits relating to the property.").

The amended complaint alleges that the slander of the plaintiff's title "caused [her] to suffer injuries and damages." (Doc. 55 at 14). This constitutes a complete failure to plead special damages and renders the claim subject to dismissal. *Rice*, 2014 WL 3889472 at *9 (ruling that an identical statement of damages "is insufficient to plead special damages because it neither alleges the unique types of damage to someone's use of property that would support a slander of title claim nor alleges specific damages that are traceable to the purported slander itself (the publication in the newspaper) as opposed to the other alleged actions in the complaint").

**V.  Fraud.**

The movants argue that Count Seven fails to plead fraud with particularity. (Doc. 60 at 12-13).

"[A] party must state with particularity the circumstances constituting fraud …." Fed. R. Civ. P. 9(b). As the plaintiff acknowledges, (Doc. 64 at 19-20), in order to satisfy Rule 9(b) she must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *American Dental Association v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (internal quotes omitted). The particularity requirement must be met as to each defendant. *Id.* ("The plaintiff must allege facts with respect to each defendant's participation in the fraud.").

Count Seven alleges that the movants and Green Tree "misrepresented that the loan was in default. Further, the Defendants made false and misleading representations, to wit: dissemination of inaccurate information regarding the loan account as being in default and dissemination of inaccurate information regarding

7

the credit history and credit of the Plaintiff that was known to be false." (Doc. 55 at 18).

Count Seven identifies the general subject matter (default, credit, credit history), but it does not identify the "precise statements" made regarding these subjects. Nor does Count Seven even generally allege who (or even which defendant) made each representation, when they did so, where they did so, or by what medium. Indeed, it is not clear from Count Seven to whom each representation was made, whether to the plaintiff or to others. Count Seven patently falls far short of the particularity required by Rule 9(b). The plaintiff's ipse dixit to the contrary, (Doc. 64 at 21), changes nothing.

## VI. Declaratory Relief.

Count Fourteen alleges that the defendants breached the contract with the plaintiff regarding notice and payment application. It seeks as relief an order: (1) declaring that the plaintiff is not in default; (2) declaring the notice of default null and void; (3) declaring that the defendants have no right or authority to foreclose; and (4) prohibiting foreclosure. (Doc. 55 at 34-35).

The movants construe Count Fourteen as an action to quiet title and thereby eliminate the mortgage and underlying debt without payment of the debt. (Doc. 60 at 14-15). The Court does not read Count Fourteen so broadly; instead, it appears the plaintiff seeks only to preclude foreclosure based on the alleged defaults made the basis of the attempted foreclosure proceedings. Certainly the movants have identified no justification for dismissing Count Fourteen "in its entirety." (*Id*. at 15).

## VII. Amendment.

The plaintiff requests leave of Court to file a second amended complaint should the Court grant any portion of the motion to dismiss. (Doc. 64 at 14, 16, 21, 22). The request is subject to Rule 15(a), which provides that a court "should

freely give leave [to amend] when justice so requires." Without acknowledging this authority, the movants urge the Court to deny leave because this is the plaintiff's second complaint, such that she has already had "ample opportunity … to cure any deficiencies in her pleading." (Doc. 66 at 6). The amended complaint, however, is the first pleading reviewed by the Court and found to be wanting; the plaintiff sought and received leave to file an amended complaint after the defendants filed motions to dismiss the original complaint (which had been filed in state court and was not subject to federal pleading standards), and the Court's grant of the plaintiff's motion mooted the defendants' motions. (Doc. 54).

## CONCLUSION

For the reasons set forth above, the movants' motion to dismiss is **granted** with respect to the plaintiff's claims against them for negligent or wanton loan servicing, wrongful foreclosure, slander of title, and fraud. To the extent the movants seek other or additional relief, their motion is **denied**. The plaintiff's request for leave to file a second amended complaint, construed as a motion for such relief, is **granted**. The plaintiff is **ordered** to file and serve any second amended complaint on or before **August 14, 2015**.

DONE and ORDERED this 27th day of July, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE