# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

KELIA WEAVER MCCLEARY,    )
    )
    **Plaintiff,**    )
    )
v.    ) **CIVIL ACTION 15-0098-WS-C**
    )
DLJ MORTGAGE CAPITAL, INC.,    )
et al.,    )
    )
    **Defendants.**    )

## ORDER

This matter is before the Court on the motion of the three remaining defendants ("the defendants") for summary judgment. (Doc. 107). The parties have submitted briefs[1] and evidentiary materials in support of their respective positions, (Docs. 107-08, 116-18), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

## BACKGROUND

According to the second amended complaint, (Doc. 77), the plaintiff financed the purchase of her home with a loan from Wilmington Finance

---

[1] "Principal briefs in support of, or in opposition to, any motion must not exceed thirty (30) pages …." Civil Local Rule 7(e). The plaintiff's brief stretches some 60 pages. (Doc. 116). The plaintiff did not seek or obtain permission to file such a monster and, after reviewing it, the Court can discern no justification for its length. Had the Court realized when it was filed that the plaintiff's brief was so long, it would have stricken the brief and required a substitute in compliance with Rule 7(e). However, because the motion for summary judgment is now ripe, and because the final pretrial conference is only a few weeks away, the Court in its discretion considers the brief despite the plaintiff's gross violation of governing rules. The defendants' motion to strike the final thirty pages of the plaintiff's brief, (Doc. 118 at 4), is **denied**.

("Wilmington"), executing a promissory note in favor of Wilmington and a mortgage with Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Wilmington. The loan was sold to U.S. Bank N.A., ("U.S. Bank"), although the plaintiff disputes the validity of the transfer. MERS transferred the mortgage to GMAC but lacked authority to do so. MERS and GMAC then assigned the mortgage and note to U.S. Bank as trustee but lacked authority to do so. (*Id*. at 3).

Since 2010, there have been four servicers of the loan. In chronological order, they are: Green Tree Servicing, Inc. ("Green Tree"); Select Portfolio Servicing, Inc. ("Select"); Selene Finance, LP ("Selene"); and DLJ Mortgage Capital, Inc. ("DLJ"). The only remaining defendants in this action are Select, Selene and DLJ ("the defendants").[2] These defendants serviced the loan from June 2013 to the present. (Doc. 77 at 3-4).

In November 2014, Selene, DLJ and U.S. Bank began foreclosure proceedings. They did so even though the plaintiff was not in default and even though the defendants had failed to accept the plaintiff's payments, had returned her payments, had accepted payments without properly crediting them to her account, had improperly assessed fees and expenses to the account, and had failed to respond to her written request for information and explanation. Moreover, the defendants initiated foreclosure proceedings even though the assignment of the note and mortgage was defective, void or otherwise unenforceable and even though the foreclosing entity lacked standing or authority to initiate such proceedings. The plaintiff's credit and reputation were damaged by the

---

[2] The only other defendants under the second amended complaint are MERS, U.S. Bank and Green Tree. After the mediator reported that the parties had reached a settlement, the entire action was dismissed in February 2016, subject to a right of reinstatement should the paperwork reflecting the settlement not be reduced to an executed writing within a specified time. (Doc. 89). The settlement documentation as to these three defendants was consummated. (Docs. 90, 98). As to Select, Selene and DLJ, the documentation was not consummated and, upon timely motion of the plaintiff, the action was reinstated as to them. (Doc. 99).

defendants' publication of information regarding the foreclosure and the plaintiff's alleged default as well as by their reporting false information regarding her alleged default to national credit bureaus.  The plaintiff claims economic damages, reputational damages and mental anguish as a result of the defendants' actions.  (Doc. 77 at 4-9).

The second amended complaint includes eleven causes of action, each one asserted against all three defendants:

- Count One        Negligence
- Count Two        Wantonness
- Count Three      Unjust enrichment
- Count Four       Breach of contract
- Count Five       False light
- Count Six        Defamation
- Count Seven      Truth in Lending Act ("TILA")
- Count Eight      Real Estate Settlement Procedures Act ("RESPA")
- Count Nine       Fair Credit Reporting Act ("FCRA")
- Count Ten        Fair Debt Collection Practices Act (FDCPA")
- Count Eleven     Declaratory relief

(Doc. 77 at 9-31).


**DISCUSSION**

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving

party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). "Therefore, the plaintiff's version of the facts (to the extent supported by the record) controls, though that version can be supplemented by additional material cited by the defendants and not in tension with the plaintiff's version." *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1274 (S.D. Ala. 2015), *aff'd*, 633 Fed. Appx. 784 (11th Cir. 2016).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[3] Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited.[4] Likewise, "[t]here is no burden upon the district court to distill

---

[3] Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record …."); *id.* Rule 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). "[A]ppellate judges are not like pigs, hunting for truffles buried in briefs," and "[l]ikewise, district court judges are not required to ferret out delectable facts buried in a massive record …." *Chavez v. Secretary, Florida Department of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) (internal quotes omitted).

[4] The plaintiff filed no evidence along with her brief. Instead, her brief announced that she is relying on "some of" the defendants' submissions. (Doc. 116 at 2). However, her brief cites to none of these submissions – not even generally, much less by "particular parts."

Despite receiving three extensions of time that ultimately gave her 61 days to file her opposition brief and evidentiary materials, (Doc. 115), the plaintiff filed a complete copy of her deposition two full weeks after finally submitting her brief. (Doc. 117). She neither sought nor received permission to do so, and she had been expressly warned that she would be given no further extensions of time. (*Id.* at 2). In such a situation, the Court has discretion to refuse to consider the deposition. *E.g., Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004). The Court so exercises its discretion.

Moreover, even though Civil Local Rule 5(a) requires that "only the relevant portions of the [discovery] material shall be filed with the motion or response," the plaintiff filed the entire 146 pages of her deposition. Worse, neither in her brief nor in her notice of submission does the plaintiff cite any particular portion of her deposition.

every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). The Court accordingly limits its review to those arguments the parties have expressly advanced.[5]

## I. Negligence and Wantonness.

Counts One and Two allege that the defendants negligently or wantonly: (1) serviced the plaintiff's loan; (2) attempted to collect sums she did not owe; (3) caused her property insurance to be canceled; (4) defaulted her; (5) attempted a foreclosure sale; (6) failed to ensure that information disseminated to third parties regarding the loan's payment history was not false and was maximally accurate; (7) failed to properly train their employees on how to investigate disputed accounts; (8) failed to properly train and/or supervise their employees and agents regarding the handling of her account; and (9) failed to remove adverse reporting from her credit after she disputed it. (Doc. 77 at 9-11). The defendants argue that all aspects of these claims are claims for negligent or wanton mortgage servicing, which cause of action Alabama does not recognize. (Doc. 108 at 4-6).

---

Due to this gross violation of Rule 56(c)(1)(A), the Court would not review the plaintiff's deposition on her behalf even had she timely submitted it.

The defendants move to strike the plaintiff's deposition from the record. (Doc. 118 at 3 n.1). The motion is **denied**. "As the Court has often noted, the proper response to [objectionable] evidence … is to discount such materials, not to strike them from the record." *Collar v. Austin*, 2015 WL 5444347 at *2 (S.D. Ala. 2015) (internal quotes omitted). Although striking an evidentiary submission may be appropriate as a sanction for noncompliance with court orders and applicable rules, *English v. CSA Equipment Co.*, 2006 WL 2456030 at *2 n.5 (S.D. Ala. 2006), declining to consider the evidence serves the same purpose.

[5] According to the second amended complaint, the defendants serviced the loan sequentially, not simultaneously. (Doc. 77 at 4). Nevertheless, except as noted in Part IX, the defendants have advanced no argument that their situations should be considered individually. The Court therefore does not do so.

As this Court has noted, "[r]ecent federal precedent interpreting Alabama law has uniformly found that no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law, at least in the absence of personal injury or property damage …." *Selman v. CitiMortgage, Inc*., 2013 WL 838193 at *5 (S.D. Ala. 2013). Moreover, "[t]he Court agrees with these decisions' construction of Alabama law, and particularly their emphasis that the mortgage servicing obligations at issue here are a creature of contract, not of tort, and stem from the underlying mortgage and promissory note executed by the parties, rather than a duty of reasonable care generally owed to the public." *Id*. at *6. Therefore, such claims "fail as a matter of law." *Id*. at *5; *accord James v. Nationstar Mortgage, LLC*, 92 F. Supp. 3d 1190, 1198-99 (S.D. Ala. 2015); *Quinn v. Deutsche Bank National Trust Co*., 2014 WL 977632 at *6-7 (S.D. Ala. 2014). All three of these cases involved negligent servicing claims brought against a servicer.[6] The Court acknowledged these principles in resolving the defendants' motion to dismiss. (Doc. 74 at 2-3). The Court granted their motion to dismiss these claims to the extent they expressly or in effect assert a claim of negligent or wanton loan servicing. (*Id*. at 9). However, because the defendants "have not undertaken to demonstrate that the entirety of Counts One and Two is captured by the foregoing rule[,] [t]he parameters of the movants' legal victory thus remain indeterminate." (*Id*. at 3).

The plaintiff does not ask the Court to reconsider its ruling, but the defendants request the Court to extend it to all nine aspects of the negligence and

---

[6] "The *James* court has correctly stated Alabama law as it applies to claims alleging that *lenders* have acted *wantonly* with regard to servicing and handling mortgages." *U.S. Bank National Association v. Shepherd,* 202 So. 3d 302, 315 (Ala. 2015) (emphasis added). Because *Shepherd* did not involve a negligence claim, or any claim against a servicer, the italicized words do not indicate disagreement with this Court's application of the same rule to negligence claims or to claims against servicers. Nor does the plaintiff argue that the rule is or should be different when the claim is brought against a servicer with which the plaintiff is not in a contractual relationship. *See generally Blake v. Bank of America, N.A.*, 845 F. Supp. 2d 1206, 1210-11 (M.D. Ala. 2012) (explaining the rule as applied to servicers).

wantonness claims.  They note the plaintiff's "admission" in her deposition that "all of the alleged actions or inactions of the defendants in [Counts One and Two] pertain to the servicing of [her] mortgage loan." (Doc. 108 at 5).  Whether conduct of a servicer falls within the prohibition on claims of negligent or wanton loan servicing, however, is a legal question that must be answered by legal authority and legal reasoning, not by a lay plaintiff's casual description of her claim.

The defendants also cite *Gregory v. Select Portfolio Servicing, Inc.*, 2016 WL 4540891 (N.D. Ala. 2016).  (Doc. 108 at 3 n.2).  The plaintiff in *Gregory* made exactly the same allegations of negligence and wantonness as does the plaintiff herein.  *Id.* at *10.  The *Gregory* Court ruled that the first five of these allegations fell within the prohibition on claims of negligent or wanton loan servicing.  It also ruled that the sixth and ninth allegations were preempted by FCRA and that the seventh and eighth allegations failed because the plaintiff could not establish all the elements of a claim for negligent employment.  *Id.* at *10-11.

The Court agrees with the *Gregory* Court as to the first five of the plaintiff's allegations.  Negligent servicing, negligent collection, negligent insurance cancellation, negligent default and negligent foreclosure all address the defendants' performance of their servicing obligations.  The Court likewise considers the sixth and ninth allegations (negligent dissemination of inaccurate information and negligent failure to remove adverse reporting disputed by the plaintiff) to implicate the defendants' servicing obligations.  *E.g., Jackson v. Bank of New York Mellon*, 2016 WL 4942085 at *4 (S.D. Ala. 2016).[7]

The seventh and eighth allegations (negligent training and supervision) fall in a different category.  While they appear also to implicate the defendants'

---

[7] A number of sister courts have held that allegations comparable to the plaintiff's sixth and ninth allegations are preempted by FCRA.  *E.g., Gregory*, 2016 WL 4540891 at *10; *Bush v. J.P. Morgan Chase Bank, N.A.*, 2016 WL 324993 at *8 (N.D. Ala. 2016). Because the defendants do not raise a preemption argument, the Court does not consider that possibility.

servicing obligations, they are dressed in the language of a separately recognized family of torts, and it is not immediately apparent that the Alabama courts would not analyze them in the latter context. Even under that analysis, however, the plaintiff's claim would fail. Such a claim requires that "the employee committed a tort recognized under Alabama law …." *Selman*, 2013 WL 838193 at *6; *accord Gregory*, 2016 WL 4540891 at *11. The only perceivable underlying tort an employee of the defendants could have committed with respect to investigating disputed accounts and handling the plaintiff's account is negligent or wanton loan servicing which, as noted above, is not a recognized tort under Alabama law. *Id.*; *accord Costline v. BAC Home Loans*, 946 F. Supp. 2d 1224, 1235 (N.D. Ala. 2013); *Collins v. BSI Financial Services*, 2016 WL 6776284 at *10 (M.D. Ala. 2016); *Bennett v. Nationstar Mortgage, LLC*, 2015 WL 5294321 at *7 (S.D. Ala. 2015).

The plaintiff in her response does not address or contest any of the foregoing. Instead, she argues that these counts are based on a duty not to mislead her by providing inaccurate information about the status of her loan. (Doc. 116 at 52-53). The second amended complaint's allegations of negligence and wantonness have been set forth above, and they do not include any allegation of misrepresentations to, or the provision of erroneous information to, the plaintiff. (Doc. 77 at 9-11). Because the plaintiff cannot amend her complaint by brief,[8] the Court need not and does not consider her argument further.

For the reasons set forth above, the defendants' motion for summary judgment as to Counts One and Two is due to be granted.

---

[8] "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Dukes v. Deaton*, 852 F.3d 1035, 1046 (11th Cir. 2017) (internal quotes omitted).

## II.  Unjust Enrichment.

Count Three alleges that the plaintiff "has been forced to pay charges" that were improper and that the defendants have been unjustly enriched "by the payment of unauthorized and unearned" fees and other charges.  (Doc. 77 at 12).

The parties agree that, in order to prevail at trial on this claim, the plaintiff must prove that the defendants "hold" funds that should be returned to her.  (Doc. 108 at 7; Doc. 116 at 54).  *See, e.g., Mantiply v. Mantiply*, 951 So. 2d 638, 654 (Ala. 2006) ("In order for a plaintiff to prevail on a claim of unjust enrichment, the plaintiff must show that the defendant *holds* money which, in equity and good conscience, belongs to the plaintiff or *holds* money which was improperly paid to defendant because of mistake or fraud.") (emphasis added, internal quotes omitted).

As the defendants point out, (Doc. 108 at 16), the plaintiff admits that the fees and charges on which Count Three is based have been charged to her account but have never been paid by her, voluntarily or otherwise, and the defendants consequently do not hold any of her money.  (Doc. 107-1 at 31-33).  The plaintiff offers no relevant response.  (Doc. 116 at 53-55).  Accordingly the defendants' motion for summary judgment as to Count Three is due to be granted.

## III.  Breach of Contract.

Count Four alleges that the defendants misapplied the plaintiff's monthly payments in violation of paragraph 2 of the mortgage and failed to send proper notices in violation of paragraph 22 of the mortgage.  Pursuant to paragraph 22, the plaintiff disputes the existence of a default on her mortgage indebtedness. (Doc. 77 at 13-16).[9]  The defendants acknowledge that the plaintiff's claim also

---

[9] Count Four also alleges that MERS and Green Tree made or attempted improper assignments, but those allegations do not extend to the defendants.

includes allegations that they failed to honor a loan modification agreement and that they charged fees and costs not permitted by contract. (Doc. 108 at 8).[10]

The defendants do not address this claim as it relates to violations of paragraphs 2 and 22 of the mortgage. (Doc. 108 at 7-9). To that extent, the claim necessarily survives the defendants' motion.[11]

With respect to breach of the modification agreement, the defendants argue: (1) the plaintiff has no evidence they breached the contract; (2) it is uncontroverted the plaintiff is in breach; and (3) the plaintiff admits she has no actionable damages. (Doc. 108 at 3-4, 7-8).[12]

---

[10] The acknowledgment is appropriate, since Count Four incorporates preceding paragraphs, including those denying the plaintiff was in default and complaining of improper charges. (Doc. 77 at 5, 8, 12, 13).

[11] In their reply brief, the defendants for the first time acknowledge and address these aspects of Count Four. (Doc. 118 at 7). As the Court has repeated many times, "[d]istrict courts, including this one, ordinarily do not consider arguments raised for the first time on reply." *Georgia-Pacific Consumer Products LP v. Zurich American Insurance Co*., 184 F. Supp. 3d 1337, 1340 n.4 (S.D. Ala. 2016) (internal quotes omitted). Indeed, the Court has articulated and applied the rule in this very case. (Doc. 73 at 4 n.1). The defendants offer no reason the Court should depart from this rule to consider an argument they had full opportunity and incentive to assert in their principal brief.

In any event, the defendants' only argument is the one-sentence assertion that "the record is devoid of any evidence supporting these assertions." (Doc.118 at 7). The defendants misapprehend their burden on motion for summary judgment. A movant cannot simply announce that there is no evidence to support a claim but must point specifically to those portions of the record that either affirmatively negate an element of the claim (*e.g.*, the plaintiff admits the defendant did not breach the agreement) or show the plaintiff cannot prove the element (*e.g.*, the plaintiff relies exclusively on a piece of evidence that does not support the element). *Clark*, 929 F.2d at 608. The defendants having failed to attempt either approach, it is legally irrelevant whether the plaintiff in her response presented evidence supporting her claim. *Id*. In short, the defendants' argument would fail even had it been timely asserted.

[12] The defendants assert the latter argument globally as to every claim. (Doc. 108 at 3-4).

The first two arguments are intertwined. Looking only at the evidence submitted by the defendants,[13] and viewing that evidence and the reasonable inferences therefrom in the light most favorable to the plaintiff, the defendants are in breach and the plaintiff is not. The note and mortgage were executed in 2006 and called for monthly payments of $1,612.35. The plaintiff obtained a loan modification that reduced her monthly payments to $806, which she made.[14] The mortgage was foreclosed in 2010 but, in May 2012, a consent order was entered that nullified the foreclosure deed, revived and reinstated the note and mortgage, and declared the loan account current. In June 2012, the plaintiff sent her $806 payment to Green Tree, which returned it and demanded payment of approximately $56,000, representing roughly two years of assertedly past-due payments. The plaintiff sent no more payments to Green Tree and instead tried without success to resolve the issue, until Select succeeded Green Tree in 2013. At that point, the plaintiff sent an $806 payment to Select, which returned it along with a demand for approximately $88,000. In 2014, the plaintiff sent an $806 payment to Selene, which likewise returned it. (Doc. 107-1 at 6-7, 17, 31-32, 34, 36, 38-42; Doc. 107-4).

Based on this evidence, the plaintiff's loan was current as of May 2012, and her monthly payment going forward was $806. The plaintiff timely made her next monthly payment of $806 in June 2012, but Green Tree improperly refused it and wrongly insisted the plaintiff's loan was not current but some $56,000 in arrears. The plaintiff attempted to straighten out the error and twice more attempted to make her monthly payment, but she was uniformly rebuffed by the defendants, who continued to insist she owed large amounts she did not owe.

---

[13] *See* note 4, *supra*. The defendants' evidence consists exclusively of: (1) excerpts from the plaintiff's deposition; (2) the note; (3) the mortgage; and (4) a consent order. (Docs. 107-1 to -4). Therefore, the only version of the plaintiff's loan history before the Court is the plaintiff's.

[14] The defendants indicate the loan modification occurred in 2008. (Doc. 108 at 14).

It is an element of a claim for breach of contract that the plaintiff have performed her obligations under the contract. *E.g., Winkleblack v. Murphy*, 811 So. 2d 521, 529 (Ala. 2001). The defendants argue the plaintiff cannot prove she performed her obligations because: (1) she admits her monthly payments after her loan modification were $1,331.22; (2) she has no documentary evidence that she ever attempted to make any $806 payments; and (3) she has no excuse for not continuing to remit monthly payments every month since June 2012. (Doc. 108 at 8).

As to the defendants' first contention, they have presented no evidence that the post-modification monthly payments were anything other than $806.[15] As to the second contention, the defendants have offered no authority for the proposition that a plaintiff's testimony that she sent in payments is inadequate to create a fact issue as to whether she did so.[16] As to the third contention, the plaintiff has explained that every time she submitted a monthly payment, the servicer returned it and erroneously announced she owed several years of payments (at the unmodified, original rate) even though the consent order had wiped out any such debt owed prior to its entry. To prevail on motion for summary judgment, it is incumbent on the defendants to demonstrate why futility or some similar concept does not excuse the plaintiff's failure to engage in the apparently pointless exercise of submitting payments the servicers had made clear would not be accepted. The defendants have attempted no such demonstration.

---

[15] The defendants cite generally to "Exh. A" (the plaintiff's deposition excerpts). They provide no pinpoint citation. Nor does their statement of facts (which does provide pinpoint citations) mention anything about a modified monthly payment of any amount other than $806. (Doc. 107). The Court, although under no obligation to do so, has reviewed every page of the plaintiff's deposition submitted by the defendants and finds no reference to $1,331.22 or to any post-modification amount other than $806. As noted, the defendants have submitted no evidence from their own files regarding the plaintiff's payment history, including evidence regarding the correct monthly payment amount.

[16] The defendants cite only *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984), which does not remotely support the proposition for which it is cited.

The foregoing discussion reflects that, according to the plaintiff's evidence, the defendants breached the loan modification agreement by refusing to accept her proper monthly payments and by demanding that she pay tens of thousands of dollars she did not owe. The evidence also reflects that the plaintiff did not breach the agreement but only stopped making payments when the defendants and Green Tree refused to accept her proper monthly payments and made clear they would continue to do so.

The defendants argue the plaintiff has no actionable damages from their breach of the modification agreement because she is still living in the property, the loan has not been foreclosed, she has made no (accepted) monthly payments in several years, and she has never paid the extra charges that show up on her statements. (Doc. 108 at 3-4). The defendants assume rather than demonstrate that these are the only elements of damage the plaintiff could recover under this claim. Perhaps they are right, but the Court is not required on motion for summary judgment either to accept their *ipse dixit* or to perform its own research on their behalf in order to determine what damages the plaintiff could or could not recover.[17]

This leaves for consideration the plaintiff's claim that the defendants charged fees and costs not contemplated by the relevant agreements. The defendants argue the plaintiff: (1) cannot prove the total amount of the improper

---

[17] By way of example only, the second amended complaint alleges that, even though the plaintiff was not in default (as discussed in text), the defendants declared that she was and began foreclosure proceedings. (Doc. 77 at 4-5). (The defendants, (Doc. 108 at 4), say the foreclosure sale has not occurred.) The defendants have not offered to show that Alabama law precludes the plaintiff from recovering under Count Four the expenses she incurred in defending those proceedings.

Moreover, the second amended complaint alleges that the plaintiff was denied credit and had her homeowner's insurance canceled due to the defendants' statements regarding default and foreclosure. (Doc. 77 at 18). The defendants have not attempted to demonstrate that Alabama law precludes the plaintiff from recovering these damages under her contract claim.

fees and costs; (2) cannot identify the provisions that make such fees and costs improper; and (3) has no actionable damages.  (Doc. 108 at 3-4, 9).

As to the second contention, the defendants point to no record evidence that the plaintiff is unable to identify the relevant provisions.[18]  As to the first contention, they likewise point to no record evidence that the plaintiff cannot quantify the improper fees and costs.[19]  Nor do they offer any explanation or legal authority for the facially dubious proposition that a plaintiff cannot recover on a claim unless she can quantify it with precision.  As to the third contention, the plaintiff testified that the defendants have been adding these charges to the amount they say is due.  (Doc. 107-1 at 30-32).  This means those amounts are part of the alleged debt to collect which the defendants filed foreclosure proceedings; as discussed in note 17, *supra*, the defendants have not attempted to show that the plaintiff cannot recover under Count Four damages flowing from this conduct.

For the reasons set forth above, the defendants' are not entitled to summary judgment as to Count Four.

## IV.  False Light.

Count Five alleges that the defendants made untrue statements to the national credit reporting media and to the plaintiff's homeowner insurance carrier that she was behind on her debt, which caused her to be held up to public ridicule

---

[18] As is their custom, the defendants in brief merely cite generally to "Exh. A." (Doc. 108 at 8).  The defendants' statement of facts does include pinpoint citations to the plaintiff's deposition, but the single page identified in support of this claim, (Doc. 107 at 4), reflects that the plaintiff was not asked whether she could identify which provisions of the contracts do not permit the challenged charges and fees.  (Doc. 107-1 at 30).

[19] The only relevant question asked of the plaintiff was how much she *paid* in objectionable charges.  The plaintiff first said she did not know but then said she had not paid any of these charges.  (Doc. 107-1 at 30, 32-33).  That is, the plaintiff did not testify (because she was not asked) that she could not calculate the amount of the challenged charges.

or shame, to have negative credit reports, and to be denied homeowner's insurance. (Doc. 77 at 16-17).

The defendants argue that a "false light" claim of invasion of privacy requires widespread dissemination of the false report and, at least in the creditor context, a "systematic campaig[n] designed to vilify the debtor or expose him to public ridicule." *Liberty Loan Corp. v. Mizell*, 410 So. 2d 45, 47-48 (Ala. 1982). (Doc. 108 at 10, 12-13). The plaintiff offers no response to the defendants' arguments and no defense of this claim at all.

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability" under certain circumstances. *Butler v. Town of Argo*, 871 So. 2d 1, 12 (Ala. 2003) (internal quotes omitted). "'Giving publicity' is making a matter public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. … The 'publicity' element is not satisfied by the communication of a fact to a single person or even to a small group of persons." *Regions Bank v. Plott*, 897 So. 2d 239, 245 (Ala. 2004) (internal quotes omitted) (defendant bank's return of two checks stamped "insufficient funds" to two presenting banks and two merchants did not constitute "publicity"). The tort extends only to a communication "that reaches, or is sure to reach, the public." *Butler*, 871 So. 2d at 13 (internal quotes omitted) (identifying, as examples of publicity, publication in a periodical, distribution of a handbill to a large number of persons, a radio broadcast, or an address made to a large audience).

The plaintiff alleges dissemination to only a handful of entities, and she makes no argument that this satisfies the publicity requirement of Alabama law. The Court is aware that a sister court has ruled that "reporting of inaccurate information to the national credit bureaus satisfies the 'publicity' requirement [of a false light claim] … because of the near limitless individuals and/or entities which can and do access such information." *Champion v. Global Credit Card Services,*

*LLC*, 2012 WL 3542225 at *6 (N.D. Ala. 2012).  The Court is doubtful.  In *Plott*, "many of the merchants referred the matter to credit bureaus and credit-reporting agencies."  897 So. 2d at 242.  While it is not clear that the two merchants involved in the false light claim had done so, the *Plott* Court made no suggestion that such a circumstance would make any difference to the "publicity" element.  Another federal court has ruled that reporting false information to credit reporting agencies does not constitute "publicity" under Alabama law.  *In re: BFW Liquidation, LLC*, 471 B.R. 652, 664 (Bankr. N.D. Ala. 2012).  Moreover, federal courts in Pennsylvania have ruled similarly regarding that state's false light cause of action.[20]  Because credit reports "are provided upon the request of the party concerned, reach but a relatively limited readership, and in most cases are kept in strict confidence," inquiries to credit reporting agencies "and the resulting reports produced by the agencies do not constitute publicity" for purposes of a false light claim.  *Mnatsakanyan v. Goldsmith & Hull APC*, 2013 WL 10156242 at *9 (C.D. Cal. 2013) (internal quotes omitted).[21]

---

[20] *Bolick v. DFS Services LLC*, 2011 WL 4359987 at *2 n.24 (E.D. Pa. 2011); *Lennon v. Penn Waste, Inc.*, 2009 WL 3255238 at *1 n.1 (M.D. Pa. 2009); *Gagliardi v. Experian Information Solutions, Inc.*, 2009 WL 365647 at *5 (W.D. Pa. 2009).

[21] Even could the provision of false information to credit reporting agencies ever amount to "publicity" for purposes of a false light claim, it would require proof in an individual case of the scope of dissemination by those agencies.  Credit reporting agencies are not like the periodicals and broadcasters mentioned in *Butler*; the media's distribution of the information is guaranteed to reach a large, broad audience, such that the mere fact of publication or broadcast establishes "publicity."  The extent of dissemination by a credit reporting agency, in contrast, depends on the number of third parties seeking out the information, and that number can range in any given case from zero to a few to, perhaps, more than a few.  Dissemination by credit reporting agencies thus parallels *Butler*'s examples of handbills and public addresses, which in any given case may reach few if any readers or hearers and as to which the plaintiff must show a "large" number of recipients.  871 So. 2d at 13.  The *Champion* Court provided no support for its perception that a "near limitless" number of persons and entities "do" access false information provided to credit reporting agencies as to any given person, which conclusion the Court thus cannot accept as an established fact.

Because the plaintiff cannot prove the "publicity" element of her false light claim, the defendants are entitled to summary judgment as to Count Five.

## V. Defamation.

Count Six alleges the foreclosure notices published in the Washington County News defamed the plaintiff by stating or implying that she was in default and that the defendants were entitled to foreclose. Count Six also alleges the defendants defamed the plaintiff by falsely informing credit reporting agencies and/or other third parties that the plaintiff had defaulted, was in foreclosure, and/or by providing these entities other false information regarding her credit history and creditworthiness. (Doc. 77 at 18-21).

The defendants raise four arguments in opposition to this claim: (1) the plaintiff in her deposition blamed others for the defamation; (2) she identified no false statement by the defendants; (3) she provided no documentation of any written statement other than the newspaper publications; and (4) she failed to plead and prove special damages as required in cases of slander *per quod*. (Doc. 108 at 9, 10-11).[22]

As to the first contention, the plaintiff did not exonerate the defendants. While she did testify that someone associated with the newspaper made oral statements to the effect the plaintiff must not pay her bills, (Doc. 107-1 at 51-54), she did not testify that only this person made false statements about her; indeed, she was not asked whether anyone else had made false statements about her.[23] As

_____

[22] In their reply brief, the defendants present a fifth argument: that they made no false statement, since the plaintiff in fact was in default. (Doc. 118 at 8). As stated in note 11, *supra*, the Court generally will not consider arguments a defendant fails to include in its principal brief. Because the defendants offer no excuse for not presenting this argument initially, the Court will follow the general rule. Even if this tardy argument had been timely asserted, it would fail; as discussed in Part III, the plaintiff has demonstrated a genuine issue as to whether she was in default.

[23] The plaintiff was asked to identify "*what* exactly has been said that is not true." (Doc. 107-1 at 48 (emphasis added); *accord id.* at 49). She was not asked to identify *who*

to the second contention, the plaintiff was not asked to identify any, much less all, untrue statements made by the defendants.[24]  As to the third contention, the defendant has again failed to demonstrate that a plaintiff must produce written proof in order to establish her claim.[25]  As to the fourth contention, the defendants have failed to demonstrate that the plaintiff's claim relies on any oral statements so as to implicate rules governing cases of slander.  At any rate, the plaintiff testified that she was denied a car loan shortly after the defamatory statements were made, (Doc. 107-1 at 55), which, as this Court recently noted, constitutes special damages.  *Ellis v. Bureaus, Inc*., 2017 WL 3034327 at *5 (S.D. Ala. 2017).

For the reasons set forth above, the defendants are not entitled to summary judgment as to Count Six.

## VI.  TILA.

Count Seven alleges that the defendants violated TILA by: (1) failing to provide a copy of the statutorily required notices; (2) issuing a disclosure statement that did not provide required disclosures prior to consummation of the transaction, did not provide required disclosures clearly and conspicuously in writing, and did not include in the finance charge certain charges imposed (including attorney's fees and late fees); (3) understating the annual percentage rate; (4) improperly amortizing the loan; and (5) failing to send proper monthly statements.  (Doc. 77 at 21-24).

---

had made untrue statements.  Neither as to what was said nor as to who said it was the plaintiff asked to confirm that she had provided a complete listing.

[24] *See* note 23, *supra.*

[25] Any libelous statements made by the defendants to credit reporting agencies or other third parties would have been created and issued by the defendant to those entities; it is not immediately apparent how the plaintiff could be in possession of them absent discovery.  The plaintiff's deposition was taken in January 2016, and discovery did not end until May 2017.  (Doc. 102; Doc. 107-1 at 2).

The defendants argue the plaintiff's TILA claim fails because: (1) she failed to provide proof of what the alleged violations were; (2) she failed to provide proof of how she was damaged or of a causal link between the alleged violations and her damages; and (3) the claim is barred by the statute of limitations. (Doc. 108 at 13-14).

Suit under Sections 1639, 1639b or 1639c must be brought "before the end of the 3-year period beginning on the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Suit under any other provision must be brought "within one year from the date of the occurrence of the violation." *Id*. Count Seven expressly identifies the Code provisions under which it is brought, and they do not include the sections carrying an extended limitations period. Therefore, all aspects of the plaintiff's TILA claim are subject to a one-year limitations period.

"This Court has observed that a TILA nondisclosure violation occurs when the transaction is consummated, in other words, at the time of closing of a residential mortgage transaction." *Frazile v. EMC Mortgage Corp.*, 382 Fed. Appx. 833, 838 (11th Cir. 2010) (internal quotes omitted) (describing *In re: Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984)). The Court agrees with the defendants that, to the extent Count Seven is based on nondisclosures occurring more than a year before suit was filed on January 20, 2015,[26] the plaintiff's claim is time-barred.[27]

As noted, Count Seven also alleges that the defendants "failed to send proper monthly statements" to the plaintiff. (Doc. 77 at 24). The plaintiff testified that every monthly statement since 2012 has improperly added new late charges and finance charges and has utilized an interest rate of 9.45% even though the loan modification had reduced the interest to 2%. (Doc. 107-1 at 53-54). The

---

[26] (Doc. 1-1 at 3).

[27] As the defendants argue, this ruling extends to any claim based on nondisclosures in connection with the original mortgage transaction (2006), the loan modification (2008), or the reinstatement of the mortgage (2012).

defendants assert that, because the lay plaintiff in deposition could not answer the legal question of whether each statement constitutes a new statutory violation with its own limitations period, this aspect of her claim is barred by the statute of limitations. (Doc. 108 at 14). On motion for summary judgment, however, it is for the defendants to demonstrate that the most recent of the plaintiffs' monthly statements are time-barred, and they have not effectively engaged that challenge.[28]

As to the defendants' first contention, the plaintiff described in her deposition the challenged elements of her monthly statements. (Doc. 107-1 at 51-54). Despite this testimony, the defendants say she "failed to provide proof" of the violations because she was insufficiently specific in her testimony, because she offered no documentation to prove her claims, and because she did not know the amounts of the challenged charges. (Doc. 108 at 13). The defendants have neither identified the "specifics" the plaintiff failed to provide, shown that she admitted to having no additional information regarding the claim, nor demonstrated that a plaintiff is required on penalty of dismissal to provide more detail than she provided. Likewise, the defendants have not shown that a plaintiff may not lawfully proceed on such a claim absent documentation.[29] Nor have they shown that a plaintiff sitting in her deposition is required by law to know by heart the dollar amount of the charges she contests or else suffer dismissal of her claim as the penalty of her ignorance. As previously stated, the Court will not develop and support arguments raised by the defendants only as *ipse dixit*.

As to the defendants' second contention, it may be that the plaintiff can show no causal connection between any timely raised TILA violation and some

---

[28] Neither case cited by the defendants addresses a similar situation.

[29] Nor have the defendants shown that the plaintiff has no such documentation (such as the monthly statements themselves). They acknowledge that the plaintiff produced 256 documents prior to her deposition, (Doc. 107-1), but they have not attempted to show either that their requests for production extended to such documents or that the plaintiff's production did not include such documents.

element of actual damage from the violation.  The Court need not consider that possibility because the plaintiff also demands statutory damages and asserts she need not prove actual damages as a predicate to recovery of statutory damages. (Doc. 77 at 22).  *See, e.g., Shroder v. Suburban Coastal Corp*., 729 F.2d 1371, 1380 (11th Cir. 1984) ("[T]he statutory civil penalties must be imposed for such a violation regardless of the district court's belief that no actual damages resulted ….") (internal quotes omitted).  The defendants have not addressed this issue, and the Court will not do so on their behalf.

For the reasons set forth above, the defendants are entitled to summary judgment as to Count Seven to the extent, and only to the extent, it is based on nondisclosures preceding January 20, 2014.

## VII. RESPA.

Count Eight alleges the defendants violated RESPA by failing to respond to the plaintiff's qualified written request ("QWR").  (Doc. 77 at 24-26).  The defendants raise two arguments:  (1) the plaintiff cannot prove she ever sent a QWR; and (2) she has failed to establish damages caused by any RESPA violation.  (Doc. 108 at 14-16).

The plaintiff testified that she sent the defendants a QWR by certified mail on September 29, 2014 and that she sent them another QWR by certified mail on November 13, 2014.  (Doc. 107-1 at 11-14, 21).  The defendants acknowledge this testimony but argue that, because the plaintiff has not produced a copy of the QWR's or the certified mail receipts, her claim fails "as a matter of law."  (Doc. 108 at 15).  The cases on which they rely for this proposition, however, do not remotely support it.  To the extent the defendants use these cases to suggest a plaintiff must have evidence that the QWR included her name and address, the identity of the addressee, the subject matter of the communication and/or a statement that explains why she believes her account is in error or that provides sufficient detail regarding other information sought,  (*id*.), they have presented

nothing from the plaintiff's deposition that either negates any of these components of a QWR or that demonstrates she cannot prove they were included in her QWR's.[30]

Absent a pattern or practice of noncompliance, RESPA provides for recovery of "actual damages." 12 U.S.C. § 2605(f)(1). "We join our sister Circuits in recognizing that damages are an essential element in pleading a RESPA claim." *Renfroe v. Nationstar Mortgage, LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016). But what are actual damages? "We have not defined 'actual damages' under RESPA, and that term is not defined in the statute itself." *Baez v. Specialized Loan Servicing, LLC*, ___ Fed. Appx. ___, 2017 WL 4220292 at *3 (11th Cir. 2017). Noting *Renfroe*'s command that RESPA should be construed liberally, the *Baez* Court assumed without deciding that the term includes non-pecuniary losses. *Id*. The defendants have not attempted to define the reach of "actual damages" under RESPA, and without such a definition they cannot meet their burden of showing the plaintiff cannot prove any such damages. Moreover, they did not ask the plaintiff in her deposition about her RESPA damages, so even if they had a working definition of such damages they could not show her inability to prove such damages.[31]

---

[30] Again, the defendants cannot rely on the plaintiff's failure to offer certain testimony at her deposition as proof she cannot prove a part of her case unless they demonstrate that their questioning was sufficiently precise to rule out the possibility of such evidence. Because the defendants did not ask the plaintiff to describe the content of her QWR's, they have not shown that the plaintiff has no such evidence.

To the extent the defendants suggest the correspondence must be "labeled as a qualified written request," (Doc. 108 at 15), the very authority they cite expressly rejects the proposition. At any rate, the same point applies: the defendants failed to ask the plaintiff whether her correspondence was so labeled and thus have not shown she cannot so testify.

[31] Count Eight alleges that the plaintiff was damaged because, without the information a proper response to the QWR would have provided, she was unable to stop the foreclosure. (Doc. 77 at 25). The defendants do not address that allegation or try to show that such a result of a RESPA violation would not constitute actual damages. *Cf.*

For the reasons set forth above, the defendants are not entitled to summary judgment as to Count Eight.

## VIII. FCRA.

Count Nine alleges that the defendants repeatedly reported to various credit reporting agencies that the plaintiff was delinquent and in default; that she repeatedly contacted the defendants to dispute their inaccurate reporting of her delinquency and default; that she also repeatedly contacted the credit reporting agencies, advised them of the inaccurate information and disputed same; that the defendants failed to properly investigate and respond to her dispute, including her reporting to credit reporting agencies, and failed to retract or delete the false information; and that the credit reporting agencies never changed their reports because the defendants kept reporting the account as delinquent and in foreclosure. (Doc. 77 at 26-29). The plaintiff testified that this claim is based on the continued reporting of the 2010 foreclosure even after it was set aside by consent order in 2012. (Doc. 107-1 at 34).

The defendants press the following arguments: (1) the plaintiff produced no copies of any communications voicing her dispute; (2) she failed to prove the credit reporting agencies tendered the dispute to them;[32] (3) she does not "know" if the inaccurate information in her credit reports came from the defendants or independently from the credit reporting agencies after correction by the

---

*Baez*, 2017 WL 4220292 at *5 ("We have recognized that a plaintiff could potentially prove actual damages for purposes of RESPA by showing that the servicer's deficient response prevented her from taking some important action.") (internal quotes omitted).

[32] The plaintiff agrees she must prove both that she registered a dispute with a credit reporting agency and that such entity notified the defendants of the dispute. (Doc. 77 at 48). *See Nawab v. Unifund CCR Partners*, 553 Fed. Appx. 856, 861 (11th Cir. 2013) (FCRA "provides a private right of action but only where the furnisher received notice of the consumer's dispute from a consumer reporting agency").

defendants; and (4) she admits that a credit report she was shown in her deposition did not mention her mortgage at all. (Doc. 108 at 16-17).

As to the defendants' first contention, they have again simply assumed, without offer of any legal authority, that the plaintiffs' claim must fail if unaccompanied by documentation corroborating her testimony.[33] As to their second contention, they have again failed to direct the Court to any portion of the record that either negates tender or reflects that the plaintiff cannot produce evidence of tender.[34] As to the third contention, no principle of law requires that a party "know" a fact it is attempting to prove; it is sufficient if the evidence and reasonable inferences therefrom would permit the jury to find the fact. If the plaintiff has evidence that she made a dispute to a credit reporting agency (and she does), that the credit reporting agency notified the defendants of the dispute (and the defendants have failed to show she does not), and that the false information nevertheless was not corrected (and she does), a reasonable inference from those facts is that the defendants did not notify the credit reporting agencies that the plaintiff's mortgage was not foreclosed. As to the fourth contention, the plaintiff testified that the false reporting continued from entry of the consent order in May 2012 up until the date of her deposition in January 2016, (Doc. 107-1 at 34); that a credit report dated December 17, 2015 does not show the plaintiff's mortgage as foreclosed, (*id*. at 44-45), scarcely negates the presence of such incorrect information at earlier times, or in reports by other credit reporting agencies.

As to the defendants' global challenge to actionable damages, (Doc. 108 at 3-4), they have not identified what damages may properly be recovered in such an action, much less shown that the plaintiff has incurred no such damages.

---

[33] The plaintiff testified that she sent her disputes to the credit reporting agencies by fax and that she did so multiple times. (Doc. 107-1 at 21, 45).

[34] The deposition excerpts submitted by the defendants contain no indication the plaintiff was asked whether she had evidence of tender by a credit reporting agency to the defendants.

Moreover, FCRA provides for statutory damages, even absent actual damages, in the case of willful violations, 15 U.S.C. § 1681n(a)(1)(A), and the plaintiff alleges a willful violation.  (Doc. 77 at 27).

For the reasons set forth above, the defendants are not entitled to summary judgment as to Count Nine.

## IX.  FDCPA.

Count Ten alleges the defendants committed multiple violations of 15 U.S.C. §§ 1692c, 1692e(2), 1692e(8), 1692e(11) and 1692(f)(1).  (Doc. 77 at 29-31).  The defendants' primary argument is that they are not "debt collectors" for purposes of FDCPA.  (Doc. 108 at 18-19; Doc. 118 at 9-12).  They also argue the plaintiff failed to establish which defendant or defendants engaged in what conduct or that the conduct violated FDCPA.  (Doc. 108 at 17-18).  Finally, they repeat their global argument that the plaintiff has no actionable damages.  (*Id*. at 3-4).

FDCPA defines "debt collector" in two generally applicable ways.  The term means either one who "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" or one who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  These definitions are subject to an exclusion for any "debt which was not in default at the time it was obtained by such person."  *Id*. § 1692a(6)(F)(iii); *Davidson v. Capital One Bank, N.A.*, 797 F.3d 1309, 1314 (11th Cir. 2015).

The defendants argue they cannot be debt collectors because they are servicers "engaging in first party collection efforts."  (Doc. 108 at 18-19).  To the extent the defendants suggest a servicer can never be a debt collector,[35] they are

---

[35] "Plaintiff acknowledged that Defendants are servicers of her mortgage loan.  (Exh. A).  Thus, Plaintiff's FDCPA claim fails because Plaintiff cannot establish that Defendants are 'debt collectors' as the term is defined by the FDCPA."  (Doc. 108 at 18).

mistaken. *E.g., Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (a servicer is not a debt collector "so long as the debt was not in default at the time it was assigned"); *Johns v. Wells Fargo Bank, N.A.*, 2015 WL 143753 at *5 (S.D. Ala. 2015) (collecting cases for the proposition a servicer can be a debt collector if the debt was in default when the servicer acquired the servicing).[36]  The plaintiffs having pointed this out, (Doc. 116 at 56-57), the defendants in their reply brief concede that one can be a debt collector under the "regularly collects" prong "if the debt being collected was in default when acquired."  (Doc. 118 at 10, 12).

The defendants do not explain how they could have been engaged in "first party" collection efforts; certainly they do not assert that the plaintiff's mortgage debt was owed to them rather than to U.S. Bank.  *See* 15 U.S.C. § 1692a(4) (defining "creditor" as one "to whom a debt is owed").  Once again, the Court will not attempt to pour content into the defendants' *ipse dixit*.

"For the purpose of section 1692f(6) of this title, such term ["debt collector"] also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."  15 U.S.C. § 1692a(6).  Section 1692f(6) prohibits debt collectors from taking any nonjudicial action to effect dispossession or disablement of property unless certain conditions are satisfied.  The defendants note without comment that "an enforcer of a security interest, such as a mortgage company foreclosing on mortgages of real property … falls outside the ambit of the FDCPA except for the provisions of section 1692f(6)."  *Warren v. Countrywide Home Loans, Inc.*, 342 Fed. Appx. 458, 460 (11th Cir. 2009) (internal quotes omitted).  (Doc. 108 at 18).

---

[36] Although no known published Eleventh Circuit opinion has adopted this position, several unpublished opinions have relied upon it.  *Diaz v. First Marblehead Corp.*, 643 Fed. Appx. 916, 919 (11th Cir. 2016); *Fenello v. Bank of America, NA*, 577 Fed. Appx. 899, 902 (11th Cir. 2014).  The defendants have suggested no reason the Eleventh Circuit would depart from this widely accepted understanding of a servicer's potential status as a debt collector.  On the contrary, their own authorities recognize that a servicer can be a debt collector if the debt was in default when assigned.

Because the defendants articulate no argument based on this quote, there is really nothing for the Court to consider. But to the uncertain extent they mean to suggest that an entity falling within one of the two generally applicable definitions of a "debt collector" is nevertheless *not* a debt collector for any purpose other than Section1692f(6) if it also falls within the supplemental definition and/or is enforcing a security interest, the Court is unpersuaded. Section 1692a(6) sets forth the two general definitions of a debt collector, with no identifiable limitation on the substantive provisions to which they apply. It then says the term "also" includes a third class of entities but exposes this class to liability only for violations of a single substantive provision. "Also" is a term of addition, not of subtraction, and it makes little sense to say that an entity that satisfies the "regularly collects" definition has its broad exposure to liability under many substantive provisions erased simply because it also satisfies the "security interests" definition and/or is enforcing a security interest. The Court does not read *Warren* to hold to the contrary.

In *Reese v. Ellis, Painter, Ratteree & Adams, LLP,* 678 F.3d 1211 (11th Cir. 2012), the defendant law firm, on behalf of the lender, sent the plaintiffs a communication demanding payment of the debt and threatening foreclosure if they did not pay. *Id*. at 1214. The Court held that the complaint plausibly alleged the defendant was a debt collector under the "regularly collects" definition. *Id*. at 1218. The defendant argued its communication "did not amount to debt collection activity but instead was merely an attempt to enforce a client's security interest." *Id*. at 1215. The Court rejected that contention because "[a] communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest." *Id*. at 1218. If an entity enforcing a security interest could not be a debt collector except for purposes of Section 1692f(6), the Eleventh Circuit could not easily have held, as it did, that the defendant was exposed to liability under Section 1692e. *Id*. at 1218-19.

As another unpublished opinion observes, "[b]ased on the reasoning of *Reese*, it is apparent an entity that regularly attempts to collect debts can be a 'debt collector' beyond § 1692f(6) of the FDCPA, even when that entity is also enforcing a security interest." *Birster v. American Home Mortgage Servicing, Inc.*, 481 Fed. Appx. 579, 582 (11th Cir. 2012). Thus, even could *Warren* be read in a manner favorable to the defendants, the subsequent published decision in *Reese* supersedes it.[37]

The foregoing discussion exhausts the defendants' arguments regarding their status as "debt collectors" as expressed in their principal brief. However, they return to the subject with renewed vigor in their reply brief. Having conceded that a servicer can be a debt collector if it acquires the servicing of the loan after it is in default, and unable to prove the loan was not in default at that time (since they insist default occurred in mid-2012, a year before any of them first became the loan's servicer), the defendants switch to an entirely new line of argument: that the plaintiff has "failed to make an evidentiary showing" either that the "principal purpose" of their business is debt collection or that they "regularly collect" debts owed another. (Doc. 118 at 10-12).

---

[37] Again without comment, the defendants quote *Warren* for the proposition that "the act of foreclosing on a security interest is not debt collection activity for the purposes of the FDCPA." 342 Fed. Appx. at 460. (Doc. 108 at 19). Whether conduct is "debt collection activity" is a separate question from whether the entity engaging in that conduct is a "debt collector." The defendants have made no effort to show either the parameters of conduct constituting "foreclosure" or that any – much less all – of the conduct for which the plaintiff sues falls within those parameters. Count Ten alleges that the defendants demanded impermissible amounts, threatened impermissible (or not actually contemplated) legal action, improperly communicated with third parties, falsely stated the amount of the debt, and failed to identify themselves as debt collectors. (Doc. 77 at 30-31). It is not immediately apparent how this conduct could constitute foreclosing on a mortgage. *See Reese*, 678 F.3d at 1217-18 (giving notice of foreclosure may relate to the enforcement of a security interest, but demanding payment does not, even when contained in the same communication). Indeed, the defendants acknowledge the plaintiff's claim is based on "statements, letter, and … phone calls trying to collect past due amounts," not on foreclosure activity. (Doc. 108 at 17).

As the Court has noted several times herein, it will not consider an argument first raised in reply, absent some good reason to do so being offered by the defendants. The defendants suggest no such reason, and the Court accordingly declines to consider their tardy argument. But even had the argument been timely raised, it could not succeed. The defendants have submitted no evidence of their own to negate that they regularly collect debts owed another or that the principal purpose of their business is debt collection. Nor have they pointed to any portion of the plaintiff's deposition either negating those points or showing she has no evidence with which to prove them. Because the defendants thus failed to carry their initial burden on motion for summary judgment, it is legally irrelevant whether the plaintiff has presented evidence to prove the defendants' status as debt collectors.

The defendants' objection to the plaintiff's proof of any FDCPA violation by any or all of them fails for similar reasons. They cite only four pages of the plaintiff's deposition regarding this claim, (Doc. 107 at 4), none of which show that the plaintiff cannot prove her claim.[38] While the plaintiff testified she could not identify specific dates the defendants contacted third parties, (Doc. 107-1 at 26-27), they have not attempted to show that this is legally fatal to her claim.[39] The plaintiff testified she kept a notebook recording every person that called her about her mortgage loan over a two-year-plus period, the date they called, and where they called (including at her job). (*Id*. at 66-68).[40] And the plaintiff

---

[38] Nor have the defendants suggested, much less shown, that the plaintiff admitted she has no further evidence beyond these four pages in support of her claims.

[39] The defendants asked if the plaintiff had the identity of the third parties contacted, but they did not press for, or obtain, a clear answer. (Doc. 107-1 at 27).

[40] The defendants complain that the plaintiff did not produce the notebook in response to discovery requests, (Doc. 107 at 4), but that does not prove the notebook is imaginary. The defendants do not state whether they ever pursued discovery of the notebook after the plaintiff disclosed its existence.

testified that the defendants sometimes called her from a blocked number, which tricked her into answering the phone. (*Id.* at 68).

The plaintiff may not have identified in her deposition which defendant did what, (Doc. 108 at 17), but the defendants have not demonstrated that they ever asked her to do so. The plaintiff may not have established that the defendants' conduct was "deceptive, unfair, or abusive," (*id.*), but the defendants have never successfully shifted the burden to her to do so. The plaintiff's testimony may (or may not) be "vague," (*id.*), but the defendants have shown neither that any vagueness is not the result of their non-exhaustive questioning nor that any such vagueness defeats her claim as a matter of law.[41]

As for actionable damages, FDCPA provides for recovery of actual damages as well as statutory damages. 15 U.S.C. § 1692(k)(a)(1), (2)(A). The defendants have not addressed what constitutes "actual damages" under FDCPA, and the Court declines to do so on their behalf. Nor have the defendants considered whether statutory damages may be awarded even absent actual damages. *See Shoup v. McCurdy & Candler, LLC*, 465 Fed. Appx. 882, 885 (11th Cir. 2012) ("'There is no indication in the statute that [an] award of statutory damages must be based on proof of actual damages.'") (quoting *Baker v. G.C. Services Corp.*, 677 F.2d 775, 780 (9th Cir. 1982)); *accord Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1997) ("The FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages.").

For the reasons set forth above, the defendants are not entitled to summary judgment as to Count Ten.

---

[41] The defendants insist the plaintiff admitted they did not threaten her with legal action, (Doc. 108 at 17), but that is an overstatement. The plaintiff testified she was threatened with ejection and foreclosure and identified Green Tree and U.S. Bank as the entities threatening ejection. She was not asked, and did not say, what entity or entities threatened foreclosure. (Doc. 107-1 at 26).

## X. Declaratory Judgment.

Count Eleven prays that, because the defendants breached the contract and because the plaintiff is not in default, the Court enter an order declaring: (1) that she in not in default; (2) that the notice of default is null and void; and (3) that the defendants have no right or authority to foreclose on her property, and enjoining the defendants from foreclosing. (Doc. 77 at 31).

The defendants argue this claim is derivative of the plaintiff's contract and tort claims and that, because they are entitled to summary judgment as to those claims, they are also entitled to summary judgment as to this claim. As addressed in Part III, however, the defendants are not entitled to summary judgment on the plaintiff's claim for breach of contract. The defendants' premise having collapsed, their conclusion falls with it.[42]

For the reasons set forth above, the defendants are not entitled to summary judgment as to Count Eleven.

## CONCLUSION

On motion for summary judgment, the initial burden lies with the defendants to show, by certain specified means, that the plaintiff cannot prove her case. In large measure they have failed to meet their initial burden and thus have cast no burden on the plaintiff to provide the Court with record evidence sufficient

---

[42] In their reply brief, the defendants assert that the plaintiff "abandoned" this claim by not addressing it in her responsive brief. (Doc. 118 at 113). The Court is aware that a number of sister courts subscribe to this theory, but the Court has rejected it as inconsistent with published Eleventh Circuit precedent. *E.g., Polion v. City of Greensboro*, 26 F. Supp. 3d 1197, 1222 (S.D. Ala. 2014); *cf. Gailes v. Marengo County Sheriff's Department*, 916 F. Supp. 2d 1238, 1241-44 (S.D. Ala. 2013) (applying the same rule to motions to dismiss). The defendants offer the Court no reason to reconsider its position.

Even if a claim could properly be deemed "abandoned" merely by not responding to a motion for summary judgment, the plaintiff did respond. As the defendants insist, this claim is "derivative" of other claims, especially breach of contract. (Doc. 108 at 19). Because the plaintiff addressed those other claims in her responsive brief, she effectively addressed her derivative declaratory judgment claim as well.

to sustain her claims.  At trial, the plaintiff will have the burden of proving every element of her causes of action, and her opposition brief provides little reason to believe she is prepared to do so.  That suspicion, however, furnishes no legal grounds for summary dismissal before trial.

For the reasons set forth above, the defendants' motion for summary judgment is **granted** as to Counts One, Two, Three and Five and as to Count Seven to the extent it is based on nondisclosures preceding January 20, 2014.  In all other respects, the defendants' motion for summary judgment is **denied**.

DONE and ORDERED this 11th day of October, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE